1  ANDRÉ BIROTTE JR.
   United States Attorney
2  ROBERT E. DUGDALE
   Assistant United States Attorney
3  Chief, Criminal Division
   ALKA SAGAR (California Bar No. 115860)
4  Assistant United States Attorney
   Deputy Chief, Major Frauds Section
5       1100 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-6223
7       Facsimile: (213) 894-6269
        E-mail: alka.sagar@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10                    UNITED STATES DISTRICT COURT

11             FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13  UNITED STATES OF AMERICA,      ) CR No.  10-1099-DSF
                                   )
14            Plaintiff,           ) GOVERNMENT'S RESPONSE TO
                                   ) DEFENDANT'S POSITION RE
15       v.                        ) SENTENCING; MEMORANDUM OF
                                   ) POINTS AND AUTHORITIES;
16  LARRY P. CORBI,                ) DECLARATION OF LANCE H.
                                   ) KIM AND EXHIBIT
17            Defendant.           )
                                   ) Sentencing Date and Time:
18                                 ) May 23, 2011; 8:30 a.m.

19  _____

20       Plaintiff United States of America, by and through its

21  counsel of record, the United States Attorney'S Office for the

22  Central District of California, hereby submits its response to

23  defendant's position re sentencing filed May 2, 2011 (Docket No.

24  34).  The government's sentencing position is based on the

25  attached Memorandum of Points and Authorities, declaration of

26  Lance H. Kim and attached exhibit, the files and records of this

27  case, and any evidence and argument that may be presented at the

28  //

1  sentencing hearing in this matter.

2  DATED: May 9, 2011.

3                                    Respectfully submitted,

4                                    ANDRÉ BIROTTE JR.
                                     United States Attorney

5
                                     ROBERT E. DUGDALE
6                                    Assistant United States Attorney
                                     Chief, Criminal Division

7

8                                     /s/
                                     _____
9                                    ALKA SAGAR
                                     Assistant United States Attorney
10                                   Deputy Chief, Major Frauds Section

11
                                     Attorneys for Plaintiff
12                                   UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                        2

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.    <u>INTRODUCTION AND PROCEDURAL HISTORY</u>

On November 23, 2010, defendant pleaded guilty, pursuant to a plea agreement, to an information charging him with bank fraud and aiding and abetting and causing an act to be done, in violation of 18 U.S.C. §§ 1344(1) and 2. (Docket No. 26).

Defendant's sentencing hearing is currently scheduled for May 23, 2011.  The presentence report ("PSR") was disclosed on February 22, 2011.  The PSR determined defendant's total offense level to be 18 and his criminal history category to be I, with a resulting advisory guideline range of 27-33 months.  The Probation Office's recommendation letter, dated February 14, 2011, recommended the imposition of a 30-month sentence, which is at the midpoint of the advisory guideline range of 27-33 months.

The government filed its response to the PSR and position re PSR and position re sentencing on May 1, 2011 (Docket No. 33), setting forth its position that the total offense level should be 16 with a corresponding advisory guideline range of 21-27 months and its recommendation that the court impose a sentence at the low end of this range, that is, a sentence of 21 months imprisonment.

Defendant filed his position re sentencing and response to the PSR on May 2, 2011 (Docket No. 34).  Defendant requests sentencing leniency based on his background and the circumstances surrounding the crime to which he pleaded guilty.

As set forth below, the government continues to believe that a sentence of 21 months imprisonment is the appropriate sentence

in this case.

II.   THE NATURE AND CIRCUMSTANCES OF THE CRIME

    A.   Defendant's Crime Was Not A Simple Crime of Opportunity

    Defendant mistakenly characterizes his offense conduct, which involved the simultaneous submission of home equity lines of credit ("HELOC") to different lenders to be secured by a second trust deed on the same property, as "a simple crime of opportunity replicated throughout the country when real estate markets were booming." (Defense Position at 2).  In fact, the submission of multiple HELOC applications to be secured by the same property to different lenders was predicated on defendant's earlier submission and approval of a purchase money mortgage application to Countrywide Bank for the purchase of the property in question.  When defendant applied for a $200,000 mortgage loan to purchase the San Jose property, he failed to disclose the fact that the source of the $420,000 down payment for the property was a loan that he had obtained from another person.  (PSR ¶ 10). The banks who approved and funded the HELOC applications submitted by defendant believed that their loans would be fully secured by the equity that defendant claimed to have in the property.

    Defendant also fails to acknowledge the false statements regarding his income and the false documents that were submitted to support his claimed income in the HELOC applications.  (PSR §12).  The banks relied on defendant's representations in evaluating defendant's ability to re-pay the loans when they approved and funded the loans.

1    Contrary to defendant's claims, the bank fraud scheme did

2  not simply involve the submission of multiple HELOCs for the same

3  property to different banks and a failure to disclose the fact

4  that other applications had also been submitted.  Rather, the

5  bank fraud scheme involved an orchestrated plan to file multiple

6  HELOC applications in a manner that would ensure that these

7  applications would be approved and would be funded prior to the

8  discovery that multiple second trust deeds had been recorded.

9  The success of the scheme required defendant and his co-

10  conspirator to file the HELOC applications in a manner that would

11  ensure their simultaneous approval (including the submission of

12  false statements and documents) and required defendant and his

13  co-conspirator to monitor the status of the applications and to

14  be available to sign closing documents and request funding as

15  soon as the HELOCs were approved.

16    B.    Defendant Caused the Victim Losses

17    Defendant argues that but for the "precipitous drop in real

18  estate prices," the victim banks may have "lost no money and

19  indeed could have profited." (Defense Position at 3).  This

20  argument is based on the assumption that the value of the San

21  Jose property would have skyrocketed in value to an amount that

22  would be sufficient to re-pay the initial mortgage loan and the

23  HELOC loans when the property was eventually sold.  However,

24  this could not be a tenable position because the appraised value

25  of the property ($460,000 to $560,000) was at all relevant times

26  less than the amount that defendant paid for the property

27  ($620,000). (PSR ¶¶ 10-16).  Since defendant had borrowed

28                                    5

$420,000 to purchase the property, he would have had to sell the property for well over $1 million ($620,000 in borrowed funds to purchase the property and over $427,000 in HELOC funding) in order to avoid causing any losses to the lenders, much less make a profit.  It is unlikely that defendant Corbi, who had purchased and sold other properties before the transaction at issue in this case, would have held this belief.

Moreover, the losses sustained by the lenders are not limited to the $43,000 realized by Countrywide on its second trust deed.  GMAC and Washington Mutual, who also funded HELOCs believing that they would be secured by a second trust deed, sustained losses as a direct result of defendant's false statements.

C.   Countrywide Bank is a Victim

Defendant claims that Countrywide Bank should not be considered a victim for loss purposes because it was able to record a second trust deed on the San Jose property as a result of the HELOC loan it funded.  However, the fact that Countrywide was able to record a second trust deed before the other banks that also funded HELOCs to be secured by the San Jose property is a mere fortuity.  As set forth in the attached declaration of Special Agent Lance H. Kim, defendant submitted HELOC applications to GMAC, Washington Mutual and Metlife Bank before he submitted an application to Countrywide Bank.  (Kim Decl. ¶¶ 3-5).  The fact that Countrywide funded and recorded its second trust deed before the other banks should not preclude it from being considered a victim, particularly in light of the fact that the initial purchase loan it granted was based on false

1   statements regarding defendant's equity in the property.

2        D.   Defendant's Scheme Was Sophisticated

3        Defendant claims that the obtaining multiple HELOCs is

4   "among the least sophisticated types of mortgage fraud" in

5   contrast to other "typical" schemes to defraud. (Defense

6   Position at 3).  As set forth in section A above, defendant's

7   bank fraud scheme was a carefully orchestrated scheme that

8   required knowledge, planning and coordination.  It is also

9   typical of a "bust-out" scheme, which is listed among the

10  "schemes most directly associated with the escalating mortgage

11  fraud problem" that defendant cites. (See Defense Position at 3-

12  4).

13       Defendant's claim that his co-conspirator realized all of

14  the gains from the HELOCs and that he did not profit is belied

15  by his admission that he and a co-conspirator agreed to purchase

16  the San Jose property, obtain funding from multiple HELOCs and

17  sell the property at a profit.  Defendant admitted giving his

18  co-conspirator (from whom he was borrowing $10,000 a month),

19  blank checks from a bank account into which the HELOC funds had

20  been deposited, and knew that $20,000 from the HELOC loan

21  proceeds had been used to pay his credit card bill.  (See

22  Exhibit A to Declaration of Lance Kim).

23       E.   The Amount of Fraud is Significant

24       Defendant attempts to minimize the actual losses suffered

25  by the victim banks in this case and shifts the blame for those

26  losses to the lax lending practices in effect at the time the

27  loans were submitted.  Although lax lending practices may have

28

7

been in effect by some of the banks, the losses sustained by the victim banks in this case were caused by: (1)  defendant's failure to report the fact that he had applied for and had been approved for other loans that were to be secured by a second trust deed and that, in some cases, those other loans had already funded (See Kim Decl., ¶ 4); and (2) defendant's affirmative false statements regarding his income and the false documentation submitted to support those statements.  For example, defendant Corbi's HELOC application to Washington Mutual included false W-2 forms which represented defendant's income to be over $200,000 in 2007. (PSR ¶ 12).  The banks relied on these statements in approving and funding the loans that defendant applied for and their losses were the direct result of defendant's false statements.

Defendant also fails to recognize that the HELOC applications he submitted were part of a larger scheme involving multiple properties for which multiple HELOCs were obtained by his co-conspirator and others although there is no evidence to indicate that defendant was a part of or aware of the larger scheme.  The source of the funds used for the down payment for the purchase of the San Jose property consisted of fraudulent loan proceeds obtained by defendant's co-conspirator.  (PSR ¶50).

F.    The HELOCs Were Recourse Loans

Defendant claims that the HELOC loans he applied for were non-recourse loans, that is, the lending institutions could only satisfy any default by taking possession of and selling the

property. (Defense Position at 17). In California, however, purchase money loans are non-recourse and HELOCs are generally recourse.[1]

III. CONCLUSION

As set forth in its initial sentencing position, the government believes that the advisory guideline sentencing range of 21 to 27 months is sufficient, but not greater than necessary, to comply with the requirements of 18 U.S.C. § 3553(a)(2), given the nature of the offense, the amount of loss and defendant's acceptance of responsibility. Accordingly, the

//

//

//

---

[1] California Code of Civil Procedure, Section 508(b), also known as the Anti-Deficiency statute, provides that, "No deficiency judgment shall lie in any event after a sale of real property or an estate for years therein for failure of the purchaser to complete his or her contract of sale, or under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property or estate for years therein, or under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling occupied, entirely or in part, by the purchaser."

government recommends the imposition of a sentence at the low

end of this range, a sentence of 21 months imprisonment.

DATED: May 9, 2011.          Respectfully submitted,

                             ANDRÉ BIROTTE JR.
                             United States Attorney

                             ROBERT E. DUGDALE
                             Assistant United States Attorney
                             Chief, Criminal Division


                             /s/
                             _____
                             ALKA SAGAR
                             Assistant United States Attorney
                             Deputy Chief, Major Frauds Section


                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA